**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| DENNIS CHARLTON, individually and on behalf of all others similarly situated ) ) ) | |
| Plaintiff, ) ) | Case No. 1:08-CV-703 |
| v. ) ) | |
| FIFTH THIRD BANCORP, *et al.* ) ) | |
| Defendants. ) | |

**ORDER TO SHOW CAUSE**

This matter is before the Court on its *sua sponte* motion for Plaintiff to show cause why this case should not be dismissed under the unclean hands doctrine.

Plaintiff Dennis Charlton asserts both state and federal claims arising out of Defendants Fifth Third Bancorp and Fifth Third Bank's (collectively "Fifth Third") alleged practice of sorting debit card transactions in descending order in order to increase the number of overdraft fees it charges to its customers.

Plaintiff alleges that he is the holder of a debit card issued to him by Fifth Third. Customers of Fifth Third may use bank-issued debit cards to purchase goods or withdraw funds from their account. Fifth Third offers "Overdraft Protection" to holders of its debit cards. *Id.* ¶ 7. Under this plan, if customers use their debit card for transactions exceeding their account balance, Fifth Third will pay the transactions in full up to a predetermined limit. *Id.* In return for this service, customers are obligated to pay certain transactional overdraft fees for each transaction for which the protection was used. *Id.* Each time the protection is activated a service fee is charged to the customer's checking account at an amount determined by the number of

1

overdrafts the customer incurred over the past 12 months: $9 per transfer for 1-10 uses in the past 12 months; $15 per transfer for 11-20 uses; and $20 per transfer for 21 or more uses. *Id.* ¶ 11.  Additionally, Fifth Third imposes overdraft charges of $33 per overdraft. *Id.* ¶ 12.  When issuing debit cards to its customers, Fifth Third issues a disclosure statement informing its customers that fees will be imposed for overdraft transactions.  Plaintiff, however, claims that the statement does not explain how Fifth Third will order transactions in determining the number of overdraft fees it will charge.  *See id.* ¶ 8.

Plaintiff contends that in assessing these overdraft charges, Fifth Third systematically re-orders and pays debit card transactions from multi-day periods from highest to lowest amount rather than paying the charges in the order in which they were presented or incurred.  *Id.* ¶ 14.  Plaintiff alleges that Fifth Third employs this practice solely to maximize the number of overdraft fees it can collect from its customers.  *Id.*  Plaintiff admits that information published by Fifth Third states that it is in the customer's best interest that Fifth Third pay larger transactions such as mortgage and tax payments first.  *Id.* ¶ 14.  However, Plaintiff claims this statement is false and misleading because Fifth Third is contractually obligated to pay all overdrafts up to a predetermined limit and, therefore, the depositor receives no additional benefit from a program that pays transactions from highest to lowest.  *Id.* ¶ 16.

The amended complaint alleges that on Saturday, April 12, 2008, Plaintiff's checking account balance was $428.98.  *Id.* ¶ 21.  On that day, Plaintiff allegedly made a series of five debit card transactions totaling $56.39 in the following order:

      1.    4:36 p.m. - $11.12

      2.    4:45 p.m. - $8.36

        3.        6:46 p.m. - $12.77

        4.        7:00 p.m. - $15.95

        5.        7:14 p.m. - $8.29

*Id.* On Sunday, April 13, 2008, Plaintiff made one additional debit purchase at 1:37 p.m. in the amount of $421.88.

Although he *knowingly and apparently intentionally* overdrafted his account on Sunday, April 13, *and although he checked his account balance on the following business day*, Monday, April 14, Plaintiff did not deposit any funds in his account to cover the purchases he made over the weekend. *Id.*

Fifth Third did not post any of these items on Plaintiff's account until Tuesday, April 15, 2008. *Id.* On that day, Fifth Third allegedly posted four of the six items. The first item posted was the last item purchased, the $421.88 purchase of April 13, 2008. *Id.* On April 16, 2008, Plaintiff's account was allegedly assessed $132 in overdraft fees representing four $33 overdraft charges for the four items posted to Plaintiff's account on April 15, 2008. *Id.* According to Plaintiff, his account was assessed $66 in additional overdraft fees on April 17, 2008, representing two $33 overdraft charges for the two remaining items purchased on Plaintiff's account on April 12, 2008. *Id.* In all, Fifth Third allegedly charged Plaintiff's account $198 in overdraft fees representing six overdraft fees of $33. *Id.*

The complaint charges that Fifth Third wrongfully reordered the sequence of his debit card transactions in order to maximize the overdraft fees it charges to customers in breach of the deposit agreement. The complaint further alleges that Fifth Third has engaged in deceptive trade practices for failing to disclose the manner in which it assesses overdraft fees.

The complaint also asserts claims for conversion, breach of the duty of good faith and fair dealing, unjust enrichment, breach of fiduciary duty, and violations of the federal Electronic Funds Transfer Act. Plaintiff also purports to file this suit on behalf a class of similar-affected debit card customers of Fifth Third.

Fifth Third has filed a motion to dismiss the complaint pursuant to Rule 12(b)(6). Doc. No. 15. Fifth Third largely defends the complaint on the grounds that the deposit agreement between the parties authorizes it to post and pay for items in any order that is convenient to it. Although Fifth Third's motion to dismiss has been fully briefed, on review of the pleadings it appears to the Court that this lawsuit was not filed in good faith and that Plaintiff has engaged in conduct amounting to barratry[1] in order to establish grounds to sue Fifth Third. Thus, it appears that this lawsuit is an abuse of the judicial process and ought to be dismissed under the unclean hands doctrine.

The unclean hands doctrine has its roots in the equitable maxim that "he who comes into equity must come with clean hands." *Cleveland Newspaper Guild, Local 1 v. Plain Dealer Pub. Co.*, 839 F.2d 1147, 1155 (6th Cir. 1988). This doctrine "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the opposing party." *Id.* (quoting *Precision Inst. Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806, 814 (1945)) (internal quotation marks omitted). In *Precision Inst.*, the Supreme Court explained the rationale behind the unclean hands doctrine:

---

[1] Barratry is "the offense of frequently exciting and stirring up quarrels and suits, either at law or otherwise." BLACK'S LAW DICTIONARY (6th ed.1990), at 150.

4

> The guiding doctrine in this case is the equitable maxim that "he who comes into equity must come with clean hands." This maxim is far more than a mere banality. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant. That doctrine is rooted in the historical concept of court of equity [sic] as a vehicle for affirmatively enforcing the requirements of conscience and good faith. This presupposes a refusal on its part to be "the abetter of iniquity."  Thus while equity does not demand that its suitors shall have led blameless lives, as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue.
>
> This maxim necessarily gives wide range to the equity court's use of discretion in refusing to aid the unclean litigant. It is not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion. Accordingly one's misconduct need not necessarily have been of such a nature as to be punishable as a crime or as to justify legal proceedings of any character. Any willful act concerning the cause of action which rightfully can be said to transgress equitable standards of  conduct is sufficient cause for the invocation of the maxim by the chancellor.

324 U.S. at 814 (some internal quotation marks omitted). Although originally an equitable defense, the unclean hands doctrine also applies in suits at law. *Los Angeles Memorial Coliseum Com'n v. National Football League*, 791 F.2d 1356, 1362 (9th Cir. 1986); *Schick v. Steiger*, 583 F. Supp. 841, 844 (E.D. Mich.1984); *see also TransWorld Airlines, Inc. v. American Coupon Exchange, Inc.*, 913 F.2d 676, 697 n.22 (9th Cir. 1990) (noting that the "defense of unclean hands, traditionally available only in equity, can be asserted in an action at law because the distinction between actions at law and suits in equity has been abolished.").   Because the unclean hands doctrine is intended to preserve the integrity of the judicial system, rather than as a defense of the litigants, the court may raise it *sua sponte* if facts warranting its application come to the court's attention. *Gaudiosi v. Mellon*, 269 F.2d 873, 882 (3rd Cir. 1959); *In re Casa Nova of Lansing, Inc.*,  146 B.R. 370, 380 (Bkrtcy. W.D.Mich.1992).   The doctrine of unclean hands requires that the alleged misconduct on the part of the litigant relate directly to the

5

transaction about which he has made a complaint. *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1383 (6th Cir. 1995).[2]

The pleadings thus far raise a number of red flags concerning the *bona fides* of this lawsuit.

First, it appears that Plaintiff has misrepresented the nature of a debit card transaction. Paragraph 6 of the amended complaint alleges that "[w]hen a customer of the Bank uses their debit card in a purchase transaction or account withdrawal, the amount charged thereon is automatically and electronically debited against the account holder's account balance and the new account balance is automatically recalculated. This process is virtually instantaneous and is fully complete by the time the purchase transaction or account withdrawal is complete." In complete contrast to the allegation that a debit card holder's account balance is adjusted immediately upon completion of the purchase transaction is Paragraph 21, which describes the actual manner in which Plaintiff's purchases were processed. Rather than an automatic process, as Fifth Third explains in its papers, Paragraph 21 shows that a debit card transaction is very much like a check clearing process where the merchant must actually present the transaction to the bank for payment. Paragraph 21 clearly shows Plaintiff's purchases actually clearing his account several days after he presented his card to the merchants.

Why then does Paragraph 6 apparently show an important misrepresentation concerning processing debit card transactions? If the customer's account is debited immediately upon conclusion of transaction, as Paragraph 6 alleges, then at a minimum it seems very much in

---

[2] Alternatively, the Court may *sua sponte* raise the issue whether the complaint has a basis in fact and law pursuant to Fed. R. Civ. P. 11(c)(3). *Ridder v. City of Springfield*, 109 F.3d 288, 297 n.8 (6th Cir. 1997).

bad faith for the bank to reorder the transactions after the fact several days later in order to maximize fees.  It is quite another thing, however, for the bank to be presented with several items for payment in one day and sort from among them the order in which they will clear the account.  Indeed, this manner of processing the transactions would seem be in compliance with the terms of the deposit agreement, which, as Fifth Third accurately indicates, permits the bank to pay items in any order that is convenient.  In fact, in this case, it would have been impossible for Fifth Third to process Plaintiff's transactions in chronological order, as he contends should have happened, because two in his first series of purchases were not presented to the bank for payment until after the last and largest purchase was presented for payment.  The Court's suspicions that Plaintiff has misrepresented the manner in which debit transactions are processed are further heightened by representations in Fifth Third's papers that Plaintiff formerly worked for one of its competitors and is a banking industry consultant.  Thus, Plaintiff presumably knows how debit card transactions work.

       Even if Paragraphs 6 and 21 are fully compatible with each other, the Court cannot escape the fact that Plaintiff knowingly and apparently intentionally overdrafted his account. Moreover, despite knowing that he was overdrafting his account, and despite having an opportunity to avoid incurring overdraft charges by making a simple $50 deposit to his account on the next business day, Plaintiff did not make any attempt to cover his purchases.  Thus, it appears that Plaintiff intentionally incurred the overdraft charges about which he now complains.  Common sense reinforces this conclusion.  Fifth Third's brief indicates, and the amended complaint shows, that Plaintiff was closely monitoring his account.  Fifth Third indicates in its brief that Plaintiff checked his account once on Saturday, April 12, five times on Sunday, April

7

13, four times on Monday, April 14, and four more times on Tuesday, April 15. These representations are consistent with the state of Plaintiff's knowledge of his account as reflected in Paragraph 21. Although Plaintiff may argue that he was relying on the overdraft protection plan to cover his purchases, given his demonstrated state of knowledge of his account, it is simply not rational behavior for a consumer to willingly incur additional service fees he could have easily avoided having to pay.[3]

In summary, given the facts that Plaintiff apparently worked in and is a consultant to the banking industry, that he intentionally overdrafted his account, that he purposefully did not make a deposit to cover his overdraft despite evidently having an opportunity to do so, coupled with the fact that Plaintiff checked his account status fourteen times over a four day period, the pleadings suggest that he intentionally structured a series of transactions to call into question the manner in which Fifth Third assesses overdraft fees and to establish a pretext for filing this lawsuit. This conduct, if found to be true, amounts to bad faith and unclean hands in the Court's opinion. Even if there were no illicit motive behind filing the lawsuit, Plaintiff would still have unclean hands for intentionally overdrafting his account and then purposefully not making a deposit to cover his purchases.

The Court recognizes that Fifth Third has filed a motion to dismiss based on the merits of the claims. As stated above, however, the purpose of the unclean hands doctrine to preserve the integrity of the judicial system. The Court has an independent duty not only to see

---

[3] For instance, accepting as valid Plaintiff's contention that the last chronological purchase of $428.98 should have cleared last, it makes no sense that he would purposely incur $42 in service charges ($9 overdraft protection fee + $33 overdraft fee) in reliance on the overdraft protection plan, particularly when a $50 deposit would have avoided incurring the fees altogether.

8

that the system is not abused by the instigation of legal proceedings in bad faith, but also not to be a party or participant in them.  Litigants do not deserve consideration of the merits of apparently contrived lawsuits.  Moreover, it would simply be unjust to allow Plaintiff to recover damages from Fifth Third based on his own purposeful mishandling of his checking account and the relative lack of effort it would have taken to avoid incurring these charges at all.

Accordingly Plaintiff is ordered to **SHOW CAUSE** within fourteen (14) days of the date of this order why the complaint should not be dismissed under the unclean hands doctrine.  Fifth Third's responsive pleading/memorandum in opposition and Plaintiff's reply brief may be filed in accordance with S.D. Ohio Civ. 7.2(a)(2).

**IT IS SO ORDERED**

Date  September 15 , 2009     s/Sandra S. Beckwith
                              Sandra S. Beckwith
                              Senior United States District Judge